**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 05-38187

BYRON ANTHONY LOOPER

Debtor

BYRON ANTHONY LOOPER

Plaintiff

v.

Adv. Proc. No. 06-3042

U.S. DEPARTMENT OF EDUCATION;
UNITED STUDENT AID FUNDS, INC.;
THE CORPORATION OF MERCER
UNIVERSITY; EDUCATIONAL
CREDIT MANAGEMENT
CORPORATION; GEORGIA STUDENT
FINANCE COMMISSION; GEORGIA
HIGHER EDUCATION ASSISTANCE
AUTHORITY; ABC BANK; DEF BANK;
X CORPORATION; Y CORPORATION;
A, B, C, D, and E

Defendants

**MEMORANDUM ON
MOTIONS FOR SUMMARY JUDGMENT**

**APPEARANCES:**  Byron Anthony Looper #323358
  Post Office Box 1000
  Petros, Tennessee  37845
  Debtor, *Pro Se*

  JAMES R. DEDRICK, ESQ.
  UNITED STATES ATTORNEY
   Helen C.T. Smith, Esq.
   220 West Depot Street

    Suite 423
    Greeneville, Tennessee  37743
    Attorneys for United States Attorney

  CHAMBLISS, BAHNER & STOPHEL, P.C.
    Bruce C. Bailey, Esq.
    Theresa L. Critchfield, Esq.
    1000 Tallan Building
    Two Union Square
    Chattanooga, Tennessee  37402
    Attorneys for Educational Credit Management Corporation

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

On February 2, 2006, the Debtor, acting *pro se*, filed a document entitled "Looper Complaint to Determine Dischargeability of Looper's Student Loan(s)" (Complaint), seeking a determination that his student loans owed to the Defendants are dischargeable under the "undue hardship" provisions of 11 U.S.C.A. § 523(a)(8) (West 2004). On April 20, 2006, Educational Credit Management Corporation, as assignee of Georgia Higher Education Assistance Corporation (ECMC), filed an Answer to Complaint to Determine Dischargeability of Looper's Student Loans, and the Answer of United States of America was filed on April 24, 2006.

Presently before the court are the following: (1) the Motion for Summary Judgment filed by the United States of America, on behalf of its agency, the United States Department of Education (Department of Education), on December 28, 2006; (2) the Motion for Summary Judgment filed by ECMC on December 29, 2006; and (3) the motion entitled "Looper Motion For: Summary Judgement Against All Defendants" filed by the Debtor on January 3, 2007. Each summary judgment motion is accompanied by a statement of undisputed material facts and memorandum of law as required by E.D. Tenn. LBR 7056-1.

Additionally, the Department of Education relies upon the following exhibits: (1) Certificate of Indebtedness and attachments; (2) Repaying Your Student Loans pamphlet; and (3) the decision in *State v. Looper*, 118 S.W.3d 386 (Tenn. Ct. App. 2003), affirming the Debtor's first degree murder conviction and sentence to life imprisonment without the possibility of parole. ECMC relies upon the Affidavit of Theresa Light Critchfield. The Debtor relies upon the following exhibits: (1) Student Loan Summary printout for the Debtor; (2) a fax from the Debtor to Kathy Williamson, Account Technician, with Ms. Williamson's responses thereto, concerning all funds deposited into

3

the Debtor's inmate trust account at the Morgan County Regional Prison for 2001 through 2004; (3) a printout of the Debtor's Trust Fund transactions regarding his inmate account as of October 30, 2006; (4) Commissary order form for Brushy Mountain Correctional Facility; (5) Declaration of Dr. Elizabeth Loftus dated July 6, 2005, concerning the Debtor's criminal trial; (6) Schedule J filed with the Debtor's bankruptcy petition on October 14, 2005, evidencing monthly expenses of $4,008.00; and (7) a letter dated August 19, 2005, to the Debtor from the Department of Education Office of the Ombudsman concerning consolidation of his student loans.

On January 23, 2007, ECMC filed its Response to the Debtor's Motion for Summary Judgment and its Response to his Statement of Material Facts. On January 31, 2007, the Debtor filed his Responses to the Defendants' Statements of Undisputed Material Facts as well as a Statement of Additional Undisputed Material Facts. Neither Defendant disputed the validity of these additional facts.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West 2006).

# I

The Debtor filed the Voluntary Petition commencing his case under Chapter 7 of the Bankruptcy Code on October 14, 2005,[1] and he obtained a general discharge of his debts on March 28, 2006. On February 2, 2006, he commenced this adversary proceeding, asking the court to find that payment of his student loan obligations owed to the various defendants would pose an

---

[1] The Debtor filed his petition prior to the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

4

undue hardship and that they should be discharged. ECMC filed its Answer on April 20, 2006, and the Department of Education filed its Answer on April 24, 2006. None of the remaining Defendants has filed a responsive pleading or otherwise appeared.[2]

In his Motion for Summary Judgment, the Debtor argues that, based upon his current financial situation, which is not likely to change, it would impose an undue hardship to require him to pay the more than $300,000.00 in student loan obligations owed to the various Defendants. In its Motion for Summary Judgment, the Department of Education argues that the Debtor does not meet the criteria for a finding of undue hardship in the Sixth Circuit because he is not required to maintain a minimal standard of living, his lack of employment opportunities are the direct result of his freely-made decisions, and he has not made a good faith attempt to repay his student loans. In its Motion for Summary Judgment, ECMC also maintains that the Debtor cannot prove an undue hardship because he can maintain a minimal standard of living, his circumstances are self-imposed, and he has not acted responsibly with respect to repayment of his student loans.

## II

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (which applies in

---

[2] On July 19, 2006, the Debtor filed a motion entitled "Looper Motion For: Default Judgement Against: The Corporation of Mercer University and United Student Aid Funds, Inc., and Notice of Hearing" (Motion for Default Judgment). The court entered an Order on August 15, 2006, deferring entry of default judgment against those Defendants pending resolution of any dispositive motions filed by any of the parties. For the reasons stated in this Memorandum, the Motion for Default Judgment will be denied.

adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted, but instead, simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).

The moving party bears the initial burden of proving that there are no genuine issues of material fact, thus entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the nonmoving party to produce specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) (citing FED. R. CIV. P. 56(e)). The nonmoving party must cite specific evidence and may not merely rely upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party, *Matsushita*, 106 S. Ct. at 1356, and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 106 S. Ct. at 2510.

Having reviewed the three Motions for Summary Judgment, the Statements of Material Facts and Additional Material Facts, and the exhibits, the court finds that no genuine issues of material fact exist. The Defendant, Department of Education, and the Defendant, ECMC, are each entitled to summary judgment, and the Complaint will be dismissed as to each Defendant. The debts owed to

6

each Defendant by the Debtor are nondischargeable debts. Because the Debtor cannot satisfy the undue hardship requirement of § 523(a)(8) with regard to any student loan obligation that might be owing any other Defendant, these debts are also nondischargeable, and the Complaint will also be dismissed as to these Defendants.

### III

The primary purpose of Chapter 7 is to relieve "honest but unfortunate" debtors of their debts and allow them a "fresh start" through a discharge of their debts. *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))). 11 U.S.C.A. § 727 (West 2004) provides for this general discharge of a Chapter 7 debtor's pre-petition debts. Section 727(b), however, limits the discharge to those debts "[e]xcept as provided in section 523 of this title . . . ." 11 U.S.C.A. § 727(b). Section 523(a), governing the nondischargeability of certain debts, provides, in material part:

> (a) A discharge . . . does not discharge an individual debtor from any debt—
>
> . . . .
>
> > (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

11 U.S.C.A. § 523(a)(8). Because student loans enjoy a presumption of nondischargeability, a debtor seeking a discharge thereof must establish that repayment will impose an undue hardship by

a preponderance of the evidence. *Siegel v. U.S.A. Group Guarantee Servs. (In re Siegel)*, 282 B.R. 629, 634 (Bankr. N.D. Ohio 2002); *Daugherty v. First Tenn. Bank (In re Daugherty)*, 175 B.R. 953, 955 (Bankr. E.D. Tenn. 1994).

The Bankruptcy Code does not specify what factors constitute an undue hardship, leaving this determination to the courts. *See Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir. 1998). In the Sixth Circuit, a debtor seeking to establish that repayment of all or a portion of student loan debt imposes an undue hardship must demonstrate the following factors:

> "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans."

*Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir. 2004) (quoting *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). Also included within this analysis are the following factors:

> (1) the debt amount; (2) the interest rate; (3) the debtor's claimed expenses and current standard of living to evaluate whether the debtor has attempted to minimize expenses; (4) the debtor's income, earning ability, health, education, dependents, age, wealth, and professional degree; and (5) whether the debtor has attempted to maximize income by seeking or obtaining employment commensurate with [his] education and abilities.

*Oyler*, 397 F.3d at 385 (citing *Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 623 (6th Cir. 2004)).

The Debtor is 42 years old. LOOPER STMT. MAT. FACTS at ¶ II.1. He holds an A.B. degree, a M.B.A., and a third unspecified graduate degree. DEPT. OF EDUC. STMT. MAT. FACTS at ¶¶ 5-6; ECMC STMT. MAT. FACTS at ¶ 3; LOOPER STMT. ADDL. FACTS at ¶ 23. He also used some portion of the student loan funds to take law classes and work towards obtaining a J.D. degree; however, he did not complete the program and/or obtain the degree. DEPT. OF EDUC. STMT. MAT. FACTS at ¶¶ 5-6; ECMC STMT. MAT. FACTS at ¶ 3; LOOPER STMT. ADDL. FACTS at ¶ 23. The Debtor has been incarcerated at the Brushy Mountain State Penitentiary, in Petros, Tennessee, since October 2000, where he is serving a life sentence with no possibility of parole. DEPT. OF EDUC. STMT. MAT. FACTS at ¶ 4; LOOPER STMT. MAT. FACTS at ¶¶ III.1-III.2.

Between September 1, 1989, and April 15, 1991, the Debtor executed six promissory notes totaling $10,500.00 from Mercer University to finance his college education. DEPT. OF EDUC. STMT. MAT. FACTS at ¶ 1. After the Debtor's deferment period ended in May 1998, he defaulted on his student loan obligation to Mercer University, and it was assigned to the Department of Education on November 10, 2004, at which time the Debtor owed $10,500.00 in principal and $3,018.75 in interest. DEPT. OF EDUC. STMT. MAT. FACTS at ¶ 1. As of April 19, 2006, the total debt owed to the Department of Education was $14,266.65. DEPT. OF EDUC. STMT. MAT. FACTS at ¶ 1. The Debtor has not made any payments to Mercer University or the Department of Education on these loans. DEPT. OF EDUC. STMT. MAT. FACTS at ¶ 1.

Between October 1991 and September 1997, the Debtor obtained sixteen student loans from USA Funds, totaling $82,715.00. OMBUDSMAN LTR. at 1. As of August 19, 2005, the total due on these loans, inclusive of interest and collection costs, was $158,583.04. OMBUDSMAN LTR. at 1.

9

Between May 1998 and June 1991, the Debtor obtained eight student loans from the Georgia Higher Education Assistance Corporation. OMBUDSMAN LTR. at 2. The Debtor does not dispute that he obtained these loans, which have since been assigned to ECMC. ECMC STMT. MAT. FACTS at ¶ 6. As of April 30, 2006, the outstanding balance owed to ECMC, inclusive of interest, was $67,082.37. ECMC STMT. MAT. FACTS at ¶ 1; ECMC RESP. TO REQUESTS TO ADMIT at ¶ 1(a). The Debtor has not made any payments to ECMC towards this loan obligation and is in default. ECMC STMT. MAT. FACTS at ¶ 2.

In 1996, the Debtor was elected as Property Assessor for Putnam County, Tennessee, and he served in that position for two years and four months. ECMC STMT. MAT. FACTS at ¶ 7; LOOPER STMT. ADDL. FACTS at ¶ 24. Following a trial, the Debtor was convicted of the first degree murder of Tennessee State Senator Tommy Burks. DEPT. OF EDUC. STMT. MAT. FACTS at ¶ 4; ECMC STMT. MAT. FACTS at ¶ 12. He has exhausted all direct appeals and is serving a life sentence without the possibility of parole. DEPT. OF EDUC. STMT. MAT. FACTS at ¶ 4; ECMC STMT. MAT. FACTS at ¶ 13.

The Debtor has one dependant, a son born in August 1998. LOOPER STMT. MAT. FACTS at ¶ II.2. The Circuit Court for Putnam County, Tennessee, has ordered the Debtor to pay child support in the amount of $161.00 per month plus $7,254.20 in medical expenses. LOOPER STMT. MAT. FACTS at ¶ II.2. The Debtor has not made any of the court-ordered child support payments and is in arrears by more than $23,515.00. LOOPER STMT. MAT. FACTS at ¶¶ II.5-II.7.

**A**

The first factor before the court requires the court to assess the Debtor's standard of living and determine whether he can afford to repay his loans. "The essence of the minimal standard of living requirement 'is that a debtor, after providing for his or her basic needs, may not allocate any of his or her financial resources to the detriment of . . . student loan creditor(s).'" *Grove v. Educ. Credit Mgmt. Corp. (In re Grove)*, 323 B.R. 216, 223 (Bankr. N.D. Ohio 2005). Accordingly, the analysis "must necessarily center around two considerations: (1) the debtor's income; and (2) those expenses which are necessary for the debtor to meet his or her basic needs." *Flores v. U.S. Dep't of Educ. (In re Flores)*, 282 B.R. 847, 853 (Bankr. N.D. Ohio 2002). The bankruptcy court must "ascertain what amount is minimally necessary to ensure that the [debtor and his] dependents' needs for care, including food, shelter, clothing, and medical treatment are met." *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1151 (6th Cir. 1996).

In order to meet the minimal standard of living factor, debtors are required to "make some major sacrifices, both personal and financial, with respect to their current style of living." *Flores*, 282 B.R. at 854 (citing *U.S.A. Group Loan Servs. v. Shirzadi (In re Shirzadi)*, 269 B.R. 664, 668 (Bankr. S.D. Ind. 2001)). This does not mean, however, that debtors must "live in abject poverty." *Flores*, 282 B.R. at 854. A debtor earning a modest income and living on an unbalanced budget with no unnecessary or frivolous expenses may be discharged based upon an undue hardship. *See Hornsby*, 144 F.3d at 438 (citing *Correll v. Union Nat'l Bank of Pittsburgh (In re Correll)*, 105 B.R. 302, 306 (Bankr. W.D. Pa. 1989)).

The proof shows that the Debtor has earned $1,321.60 since being incarcerated in 2000, an average of $188.80 per year. LOOPER STMT. MAT. FACTS at ¶¶ III.10-III.11; WILLIAMSON FAX. Nevertheless, the proof also shows that the Debtor does not have actual living expenses. His meals, clothing, shelter, basic medical care, dental care, and eye care are provided by the State of Tennessee. CRITCHFIELD AFF. ¶ 3. The Debtor asserts that the Tennessee Department of Corrections can assess him tens of thousands of dollars every year for health care costs, housing, board, and medical costs. LOOPER STMT. MAT. FACTS at ¶¶ V.1-V.2, V.4-V.6, V.8-15. However, these "facts" were disputed by ECMC, and the Debtor failed to offer into evidence any proof of their validity, and the court considers these statements to be unsubstantiated argument. Moreover, while the Debtor submitted evidence that Commissary items must be purchased and argues that he requires many of these items in order to alleviate his various medical conditions, these items appear to be "extras" rather than "essentials." *See* COMMISSARY ORDER FORM.

The Debtor also argues that he has substantial litigation and copy expenses, requiring approximately $3,300.00 per month for his expert witness, legal copies, postage, notary fees, deposition expenses, attorneys, legal books, and research and support services. LOOPER STMT. MAT. FACTS at ¶¶ VI.2-3, VII.A.3, VII.B.4-7, VII.C.3; SCHEDULE J.

The question is whether the Debtor can meet a minimal standard of living, which includes only those expenses that are necessary for meeting the Debtor's basic needs. Based upon the proof presented, the court finds that the Debtor maintains a minimal standard of living. He earns minimal funds; however, his basic living needs are furnished by the State of Tennessee. Accordingly, the

Debtor cannot meet the first prong of the *Brunner/Oyler* test that it would be an undue hardship to repay his student loan obligations owed to the Department of Education and/or ECMC.

**B**

The second factor to be considered is the existence of "additional circumstances" to indicate that the Debtor's current financial circumstances are beyond his control and will continue into the future. The Bankruptcy Code does not provide a specific list of "additional circumstances" to be considered to indicate the persistence of a debtor's state of affairs. "Such circumstances must be indicative of a 'certainty of hopelessness, not merely a present inability to fulfill financial commitment.' They may include illness, disability, a lack of useable job skills, or the existence of a large number of dependents. And, most importantly, they must be beyond the debtor's control, not borne of free choice. Choosing a low-paying job cannot merit undue hardship relief." *Oyler*, 397 F.3d at 385-86 (citations omitted); *see also Healey v. Mass. Higher Educ. (In re Healey)*, 161 B.R. 389, 396 (E.D. Mich. 1993) ("A resolute determination to work in one's field of dreams, no matter how little it pays, cannot be the fundamental standard from which 'undue hardship' . . . is measured."). The Debtor must establish that his

> distressed state of financial affairs [is] the result of events which are clearly out of the debtor's control; . . . that [he has] done everything within [his] power to improve [his] financial situation[, and] that the hardship [he] is experiencing is actually "undue," as opposed to the garden variety financial hardship experienced by all debtors who file for bankruptcy relief.

*Kirchhofer v. Direct Loans (In re Kirchhofer)*, 278 B.R. 162, 167 (Bankr. N.D. Ohio 2002) (citations omitted).

The Debtor argues that he suffers from severe health problems, including (1) chronic sinus troubles; (2) fluid/congestion in his ears; (3) dry eyes; (4) dizziness; (5) heart problems; (6) chronic enlarged veins/arteries in his chest, neck, and left arm; (7) hemorrhoids; (8) irritable bowel syndrome; (9) gastrointestinal problems; and (10) chronic knee and shoulder problems. LOOPER STMT. MAT. FACTS at ¶¶ VIII.4, X.7, XI.1, XII.1, XII.4, XIII.1. He does not claim that these health issues are the reason for his inability to earn additional income, but he does maintain that due to these health problems, his limited funds are necessarily spent on remedies.

The Department of Education and ECMC argue that the Debtor cannot meet this prong because his circumstances are self-imposed, and the court agrees. Prior to his conviction and incarceration, the Debtor had been elected to the position of Property Assessor for Putnam County, Tennessee. He has three college degrees and has completed course work toward obtaining a law degree. It is the Debtor's own actions that led to his conviction and incarceration. While the Debtor's earning potential is decidedly limited by his incarceration, his current and future state of financial affairs is directly attributable to his actions, and he cannot escape the responsibility therefor. Accordingly, based upon evidence presented, the court finds that the Debtor has not met his burden of proof with respect to the second *Brunner/Oyler* factor because the Debtor's financial circumstances are the direct result of his actions.

C

Finally, under the third factor of the *Brunner/Oyler* test, the court focuses on whether the Debtor has made a good faith effort to repay the loans. Under the analysis, "a primary consideration,

as one would expect, is whether the debtor actually made any payments on the obligation, and if so, the total amount of payments." *Hall v. United States Dep't of Educ. (In re Hall)*, 293 B.R. 731, 737 (Bankr. N.D. Ohio 2002). Additionally, when determining whether the Debtor has acted in good faith in attempting to repay the student loan obligation, the courts have been instructed to examine other factors, including:

> (1) whether a debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;
> (2) whether the debtor has realistically used all of [his] available financial resources to pay the debt;
> (3) whether the debtor is using [his] best efforts to maximize [his] financial potential;
> (4) the length of time after the student loan first becomes due that the debtor seeks to discharge the debt;
> (5) the percentage of the student loan debt in relation to the debtor's total indebtedness;
> (6) whether the debtor obtained any tangible benefit(s) from [his] student loan obligation.

*Flores*, 282 B.R. at 856 (citations omitted). This list is not exhaustive, and not all factors will apply to all debtors.

Under the *Brunner/Oyler* test, the Debtor should explore payment alternatives, such as the William D. Ford Direct Loan program. *See, e.g., Murphy v. CEO/Mgr., Sallie Mae (In re Murphy)*, 305 B.R. 780, 799 (Bankr. E.D. Va. 2004). Nevertheless, "the failure to explore such programs, especially if the programs offer no effective relief, is not per se an indication of a lack of good faith." *Cota v. U.S. Dep't of Educ. (In re Cota)*, 298 B.R. 408, 420 (Bankr. D. Ariz. 2003). Here, the Debtor did not apply for this program, stating that he did not qualify because his low income would not cover even the interest payments. LOOPER STMT. ADDL. FACTS at ¶ 15. The Debtor states that he did request a deferment/forbearance from Mercer University in February 1999, which it declined,

and that he requested and was granted a deferment/forbearance from his other lenders, so that he did not default upon them until after his August 2000 trial. LOOPER STMT. ADDL. FACTS at ¶¶ 6-7, 9. The Debtor also inquired as to loan consolidation; however, he was advised by the Office of the Ombudsman for the Department of Education that, under federal regulations, incarcerated persons in a federal or state penal institution are ineligible to participate in any of the federal financial aid program loans. OMBUDSMAN LTR. at 3; LOOPER STMT. ADDL. FACTS at ¶ 20.

The Debtor does not dispute that he received a benefit, in the form of three degrees, from his student loans. LOOPER STMT. ADDL. FACTS at ¶ 23. There is also no dispute that the Debtor has never made any payments on his loan obligations to either the Department of Education or to ECMC. DEPT. OF EDUC. STMT. MAT. FACTS at ¶ 1; ECMC STMT. MAT. FACTS at ¶ 2. Although the Debtor remained in school at least part-time until May 1998, thus entitling him to a deferral through November 1998, he never made a single payment on his student loan obligations following the end of his deferral period and/or any of the deferment/forbearance periods granted him. LOOPER STMT. ADDL. FACTS at ¶¶ 2, 8-9, 23.

Based upon these facts, it does not appear to the court that the Debtor has made real any effort, much less a good faith one, to repay his student loans to the Department of Education and ECMC, or to Mercer University and the Georgia Higher Education Assistance Authority before them. Although the Debtor has taken some proactive steps with respect to his student loans, the court cannot find that he has proceeded in good faith based upon the *Flores* factors. The Debtor did request deferment of his student loan obligations in 1999, and he was granted deferment of all except those with Mercer University, whereby the Debtor defaulted upon his loans to Mercer University in

16

1999, but the remainder of his loans were not in default until after he was incarcerated in 2000. Additionally, the Debtor did not request a payment plan because he was advised that he would not qualify, although he did inquire as to the availability of consolidation, a program in which he is restricted from participating.

Nevertheless, the Debtor never made any payments to any entity to which he owed or owes his student loan obligations, from which he has acknowledged receiving a direct benefit in the form of three degrees. His lack of earning potential and subsequent failure to repay are a direct result of his own actions. Finally, the Debtor has received a discharge of his pre-petition debts other than his student loan obligations. Accordingly, the court finds that the Debtor has not satisfied the third prong of the *Brunner/Oyler* test by showing that he has made a good faith effort to repay his loans.

## IV

In summary, based upon the evidence presented in conjunction with its analysis under the *Brunner/Oyler* test, the court finds the Debtor can, based upon his current income and expenses, maintain a minimal standard of living for himself. The court additionally finds that the Debtor has not made a good faith effort to repay his student loan obligations to either the Department of Education or ECMC. Furthermore, although the court finds that the Debtor has maximized his income potential under his present circumstances, the court holds that the Debtor's severe financial

status is due to circumstances that were completely within his control, and accordingly, he does not meet the standard set forth by the Sixth Circuit.³

An order consistent with this Memorandum will be entered. The order will be applicable to all Defendants, regardless of their participation, or lack thereof, in this adversary proceeding.

FILED: April 25, 2007

> BY THE COURT
>
> /s/  RICHARD STAIR, JR.
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE

---

³ Because the Debtor did not meet his burden of proof with respect to establishing an undue hardship, the court may not exercise its equitable powers under 11 U.S.C.A. § 105(a) (2004) to grant a partial hardship discharge. *Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 624 (6th Cir. 2004).